NO. 07-02-0438-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



MARCH 31, 2004



______________________________




CHRISTINE PESINA, INDIVIDUALLY


AND AS NEXT FRIEND OF ERIC MARTINEZ, APPELLANT



V.



MARK ALAN HUDSON, GERALD HUDSON


AND BECKY HUDSON, APPELLEES



_________________________________



FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2001-513,832; HONORABLE JOHN FORBIS, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

OPINION


 Appellant Christine Pesina, individually and as next friend of Eric Martinez, sued
Mark Hudson and his parents, appellees Gerald and Becky Hudson, because of injuries
Eric suffered while a passenger in an automobile being driven by Mark. Christine alleged
that Gerald and Becky (collectively, "the Hudsons") negligently entrusted the automobile
to Mark. The trial court granted summary judgment to the Hudsons. We reverse and
remand. 

BACKGROUND

 On April 11, 2001, the Hudsons allowed their son, Mark, to use an automobile to
drive himself and Eric Martinez, Christine's son, to school. While he was driving to school,
Mark collided with another vehicle and Eric was injured.

 Christine filed suit against Mark and the Hudsons. According to Christine's petition,
Mark pulled up to a stop sign, then pulled into the intersection without yielding to an
automobile on the intersecting roadway. Christine alleged, inter alia, that Mark negligently
failed to keep a proper lookout, failed to stop at the stop sign, failed to yield the right of way
to the other vehicle, and entered the intersection when he could not do so safely. She
alleged that the Hudsons acted negligently in entrusting their vehicle to Mark because they
knew or should have known that Mark was a reckless or incompetent driver. 

 The Hudsons filed a motion for summary judgment supported by summary judgment
evidence. They urged that no genuine issues of material fact existed regarding whether,
at the time the Hudsons entrusted their vehicle to Mark on the morning of April 11th, (1)
Mark was an unlicensed, incompetent or reckless driver, or (2) the Hudsons knew or
should have known that Mark was an unlicensed, incompetent or reckless driver. The
Hudsons urged both that there was no evidence on the challenged elements of negligent
entrustment, see Tex. R. Civ. P. 166a(i), (1) and that the summary judgment evidence proved,
as a matter of law, that (1) Mark was not an unlicensed, incompetent or reckless driver,
and (2) the Hudsons did not know, nor should they have known, that Mark was an
unlicensed, incompetent or reckless driver. See TRCP 166a(c). 

 The Hudson's motion for summary judgment sets out the several instances of
Mark's driving history on which Christine relied in her claim of negligent entrustment,
although the Hudsons disputed Christine's claim that the several instances were evidence
supporting her position. According to their motion and the summary judgment evidence,
Mark was involved in six motor vehicle incidents as a driver during a period of less than two
years prior to the April 11, 2001 accident in which Eric was injured: 

 a. In October 1999, Mark, Eric, and two other boys drank whiskey, rum,
vodka and tequila at one of the boy's homes. Mark then drove the four of
them to school. He was sent home and suspended for three days. Mark
testified that he was intoxicated on the occasion, although he was not
stopped while driving and no test was administered to determine his blood
alcohol level. The Hudsons were aware of the incident and took corrective
action by removing Mark's driving, television, telephone and other privileges
for a time. According to Mark's testimony, "They felt that if I didn't have the
responsibility to drive safe, I shouldn't be driving, and I was grounded there
for some time." 

 b. In the spring of 2000, Mark bumped a tree while practice driving in a
church parking lot. His mother was with him at the time, and the impact
damaged the car's bumper and grille. Gerald was aware of the incident. 

 c. During the summer of 2000, Mark, while alone late at night, was ticketed
for driving 75 mph in a 65 mph speed zone. The Hudsons were aware of the
ticket. They punished Mark by taking away his driving privileges for a time. 

 d. A collision incident occurred in October 2000. (2) Mark was following a
vehicle which slowed to turn and Mark pulled out to go around the vehicle. 
To avoid an oncoming car he braked, turned back toward the vehicle he was
trying to pass, and rear-ended it in what was referred to as a minor collision. 
Mark told his parents about the accident. 

 e. On two separate occasions in late 2000 or early 2001, Mark used
marijuana and then drove an automobile. The Hudsons found out later about
the incidents. They took corrective action by taking Mark's vehicle away from
him and did not return the vehicle until Mark had two "clean" drug tests.

 The Hudsons urged in the trial court and maintain on appeal that none of the
incidents, taken separately, comprise more than a scintilla of evidence that Mark was an
unlicensed, incompetent, or reckless driver, and thus that the Hudsons could not have
known that he was such a driver. In addition, the Hudsons' motion for summary judgment
asserted that Mark was in nowise impaired or had any condition on the morning of the
accident. 

 Christine's response to the motion for summary judgment attached and referenced
deposition testimony from Mark and the Hudsons. Her response claimed that summary
judgment should be denied because the evidence she attached was sufficient to raise a fact
question as to whether the Hudsons entrusted a vehicle to Mark when they knew or should
have known that he was a reckless driver. Her response did not urge that Mark was
unlicensed or was an incompetent driver. 

 The trial court signed an order granting summary judgment as to the negligent
entrustment claim on April 29, 2002. By a July 26th order of severance, the negligent
entrustment claim against the Hudsons was severed from the remainder of the case. (3) 

 On appeal Christine contends that Mark's driving history prior to April 11, 2001,
inferences to be drawn from that history, and the Hudsons' knowledge of the history
comprise more than a scintilla of evidence that Mark was a reckless driver and that the
Hudsons knew or should have known of his recklessness. She also contends that the
Hudsons' motion for summary judgment was legally insufficient. Because of our disposition
of the appeal we do not consider whether the motion for summary judgment was legally
sufficient. Tex. R. App. P. 47.1. 

STANDARD OF REVIEW

 A no-evidence summary judgment will be granted only when: (1) there is a complete
absence of evidentiary support for a necessary element of the claim, (2) rules of law or rules
of evidence will not allow the court to give weight to the evidence offered to prove a
necessary element of the claim, (3) the evidence offered to prove a necessary element of
the claim is no more than a mere scintilla, or (4) the evidence conclusively establishes that
a necessary element of the claim does not exist. See Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997). A no-evidence summary judgment may not be granted
if the non-movant presents more than a scintilla of probative evidence to establish the
disputed element(s). See TRCP 166a(i); Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d
502, 506 (Tex. 2002). More than a scintilla of evidence is presented if the evidence enables
reasonable and fair-minded people to reach differing conclusions. Merrell Dow Pharms.,
953 S.W.2d at 711. Less than a scintilla of evidence is presented if the evidence does no
more than create mere surmise or suspicion of a fact. See Kindred v. Con/Chem, Inc., 650
S.W.2d 61, 63 (Tex. 1983). 

 A traditional summary judgment requires application of the standards established in
Nixon v. Mr. Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985): (1) the
movant for summary judgment has the burden of showing that no genuine issues of
material fact exist and that the movant is entitled to judgment as a matter of law, (2) in
deciding if there is a disputed material fact issue, the reviewing court must take as true all
evidence favorable to the non-movant, and (3) every reasonable inference must be indulged
in and any doubts resolved in favor of the non-movant. Id. Summary judgment is proper
for a defendant if the defendant affirmatively disproves at least one element of the plaintiff's
claim or establishes all necessary elements of an affirmative defense to the claim. See
American Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997). 

 We will examine the record in light of Christine's response in the trial court which
urged that more than a scintilla of evidence was presented on the issue of Mark's being a
reckless driver. See Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 203-04 (Tex.
2002). In examining the record, we consider any evidence presented in the light most
favorable to the non-movant Christine. See Wal-Mart Stores, 92 S.W.3d at 506; Johnson,
73 S.W.3d at 208. NEGLIGENT ENTRUSTMENT

 A cause of action for negligence has three elements: (1) a legal duty owed by one
party to another, (2) a breach of that duty, and (3) damages proximately caused by that
breach. See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990). 
A claim for damages based on the theory that a party negligently entrusted a vehicle to
another and thereby caused damages has the same three elements. See Garcia v. Cross,
27 S.W.3d 152, 155 (Tex.App.--San Antonio 2000, no pet.). 

 Christine claims that the Hudsons negligently entrusted their vehicle to Mark
because: (1) the Hudsons entrusted to Mark a vehicle they owned or over which they had
the right of control, (2) at the time of entrustment Mark was a reckless driver, (3) the
Hudsons knew or should have known at the time of entrustment that Mark was a reckless
driver, (4) Mark was negligent on the occasion in question, and (5) Mark's negligence
proximately caused the accident. See Schneider v. Esperanza Transmission Co., 744
S.W.2d 595, 596 (Tex. 1987); McCarty v. Purser, 379 S.W.2d 291, 294 (Tex.1964). 

 To obtain recovery against the Hudsons, Christine essentially must prove two
negligence causes of action in one lawsuit. One cause of action requires proof that Mark's
negligence in operating the vehicle proximately caused the accident and Eric's injuries
(elements 4 and 5 of her allegations). The other cause of action requires proof that the
Hudsons were negligent in entrusting a vehicle to Mark because he was a reckless driver
and that their negligence was a proximate cause of Eric's injuries (elements 1, 2 and 3 of
her allegations together with proximate causation). See Schneider, 744 S.W.2d at 596-97
(entrustment liability rests upon the combined negligence of the entrustor in entrusting the
vehicle and the negligence of the driver entrusted with the vehicle; the risk that forms the
basis for determining that the entrustment was negligent must also be a proximate cause
of the accident in question for the entrustor to be liable); McCarty, 379 S.W.2d at 294. It
is the elements of the latter of the two negligence causes of action that the Hudsons
challenged by their summary judgment motion. 

 On appeal, the Hudsons seek to sustain their summary judgment by asserting that
Mark was not a reckless driver and, therefore, they could not have known that he was a
reckless driver. Additionally, the Hudsons argue that there was no evidence that their
entrustment, even if negligent, was a proximate cause of the damages asserted. See
Schneider, 744 S.W.2d at 596-97; McCarty, 379 S.W.2d at 294. 

 At the outset, we decline to consider the Hudsons' assertion that their entrustment
of the vehicle to Mark, even if negligent, was not a proximate cause of Eric's injuries. The
issue was not expressly presented in the trial court by their motion for summary judgment. 
See TRCP 166a(c); Johnson, 73 S.W.3d at 204; Casso v. Brand, 776 S.W.2d 551, 553
(Tex. 1989). 

 In focusing on the issue of whether Mark was a reckless driver, the Hudsons urge
us to apply the definition of "reckless" which the Legislature has used in criminalizing
reckless driving. The criminal offense of reckless driving is committed when a person drives
a vehicle in wilful or wanton disregard for the safety of persons or property. Tex. Transp.
Code Ann. § 545.401 (Vernon 1999). Wilful and wanton disregard is synonymous with
conscious indifference. See White v. State, 647 S.W.2d 751, 753 (Tex.App.-Fort Worth
1983, writ ref'd). The Hudsons do not cite authority for their proposition. Nor do we find
authority requiring the driving history of an entrustee to reflect a pattern of wilful and wanton
actions in disregard for the safety of other persons or property before the entrustee can be
found to be "reckless" for the purposes of a negligent entrustment action.

 On the other hand, we note that in regard to negligent entrustment, drivers have
been determined to be reckless when their history of driving habits, traffic violations, or
intemperance (whether due to wilful and wanton actions or otherwise) exhibits a pattern of
such deviations from lawful and proper manner of vehicle operation that if the entrustor had
knowledge of the history, the entrustor should reasonably have anticipated that the driver
would operate the entrusted vehicle in a wrongful manner and thereby damage persons or
property. See Schneider, 744 S.W.2d at 596; Louis Thames Chevrolet Co. v. Hathaway,
712 S.W.2d 602, 604 (Tex.App.-Houston [1st Dist.] 1986, no writ); Revisore v. West, 450
S.W.2d 361, 364 (Tex.Civ.App.-Houston [14th Dist.] 1970, no writ); Broesche v. Bullock, 427
S.W.2d 89, 93 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.). We decline to
engraft the heightened standard for criminalized reckless driving onto the common-law
negligent entrustment cause of action. 

 The Hudsons also argue that because there is no evidence that Mark actually was
under the influence of alcohol or marijuana on the occasions in question, the evidence that
he drove after using the substances cannot be considered in regard to whether he was a
reckless driver. We disagree. 

 The episodes of Mark's driving after using alcohol and marijuana were of sufficient
concern to the Hudsons that they temporarily suspended Mark's privileges to drive when
they found out about the situations. Mark testified that the suspension for his drinking and
driving was because the Hudsons considered the matter a safety issue. Viewing the
evidence in the limited record before us in the light most favorable to Christine, evidence
that Mark used marijuana (4) and that the Hudsons restricted Mark's driving privileges based
on their knowledge of that usage raises a similar inference that they considered the matter
a driving safety issue. Such matters could be considered (5) in regard to whether Mark was
a reckless driver; that is, whether Mark's driving history was such that the Hudsons should
reasonably have anticipated that Mark would operate an entrusted vehicle in an unsafe
manner, resulting in damage to persons or property. 

 The Hudsons further argue that the instances in which Mark drove after drinking and
after using marijuana should not be considered in regard to the negligent entrustment claim
because there is no allegation that Mark used alcohol, marijuana or any similar substance
on the morning of the accident, and the risk which might have been anticipated from those
past instances was not a proximate cause of the accident. See Schneider, 744 S.W.2d at
596-97. As noted previously, we will not consider the proximate cause aspect of the
Hudsons' argument because they did not present the issue in their motion for summary
judgment. 

NO-EVIDENCE SUMMARY JUDGMENT 

 If each incident is viewed separately, as the Hudsons assert should be done, none
of the episodes might, in and of themselves, be sufficient evidence for Christine to avoid
summary judgment. But, they are not to be viewed separately and in isolation from one
another. The term "history" commonly is used to reference those past events that form the
subject matter of a history. See In the Matter of the Marriage of Stein, No. 07-03-0289-CV
*7 (Tex.App.--Amarillo 2004, no pet. h.); Merriam-Webster's Collegiate Dictionary 549
(10th ed. 2002). Mark's "history" of driving habits, traffic violations and intemperance
includes all such events predating the Hudsons' entrustment of a vehicle on the date of the
accident. And, viewing the events of that history in the light most favorable to Christine's
claim, each of the instances could be considered in relation to whether Mark was a reckless
driver. 

 The series of events, compressed as they were to within an approximate two-year
period preceding the date of the accident, presented more than a scintilla of evidence that
Mark was a reckless driver within the context of a negligent entrustment cause of action. 
Thus, the grant of a no-evidence summary judgment would have been improper.


TRADITIONAL SUMMARY JUDGMENT 

 Mark testified in his deposition that he was intoxicated when he drove himself and
several friends to school after drinking whiskey, rum, vodka and tequila. He testified that
he drove after using marijuana on at least two other occasions, and summary judgment
evidence was not presented to conclusively prove that he was not impaired by the
marijuana. See Tex. Transp. Code Ann. §§ 521.343(a)(3), 521.372(a)(1) (Vernon 1999 and
Supp. 2004). Nor does the summary judgment proof show that, as a matter of law, Mark
(1) did not deserve the speeding ticket, (2) was not at fault in the collision with the tree (a
fixed object), or (3) was not at fault in the rear-end collision with another automobile. 

 In sum, the Hudsons did not prove, as a matter of law, that one or more of the
referenced incidents were not of a type to be considered on the question of Mark's alleged
recklessness as a driver. We have previously determined that the events comprising Mark's
history, as a whole, presented at least a scintilla of evidence that Mark was a reckless driver
within the context of a negligent entrustment cause of action. Thus, the Hudsons did not
prove by their summary judgment evidence that, as a matter of law, Mark was not a reckless
driver. 

 Finally, we consider the Hudsons' uncontroverted proof that they took corrective
action following Mark's driving transgressions. Given the record before us those actions
and the small amount of time which elapsed between the last corrective action and the
accident did not prove that, as a matter of law, Mark had changed, by overcoming his
driving history and the risk it presented, and was no longer a reckless driver. We offer no
opinion on what part, if any, the Hudsons' corrective actions would play in regard to the
proximate cause issue.

 Summary judgment on a traditional basis was not warranted. 

CONCLUSION

 Because the Hudsons were not entitled to either a no-evidence summary judgment
or a traditional summary judgment, we reverse the judgment and the cause is remanded
for further proceedings. 

 

 Phil Johnson

 Chief Justice




 
1. Further reference to a rule of Civil Procedure will be by reference to "TRCP __."
2. Mark's testimony dated both the collision incidents in 2000; other testimony raised
the inference that they may actually have occurred in 1999. In their summary judgment
motion, the Hudsons represented to the trial court that the second collision incident
occurred in October of 2000. 
3. Christine's notice of appeal identifies the July 26, 2002 order as the order appealed
from. The July 26th order merely severs the negligent entrustment claim from the
negligence claim. We conclude, however, that the notice of appeal constitutes a bona fide
attempt to invoke this court's jurisdiction over the summary judgment and is sufficient to
invoke our jurisdiction. See City of San Antonio v. Rodriguez, 828 S.W.2d 417, 418 (Tex.
1992) (per curium); Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc., 813
S.W.2d 499, 500 (Tex. 1991). 
4. Whether evidence that Mark used alcohol or marijuana before driving will be
admissible at trial without proof that his driving abilities were impaired thereby or that he
was intoxicated while driving are questions not presented and we offer no opinion on those
matters.
5. We offer no opinion as to whether the instances of Mark's driving after using
alcohol and marijuana, without consideration of the additional driving incidents and
speeding ticket, comprise evidence that Mark was a reckless driver sufficient for Christine
to avoid summary judgment. 



atin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 font-family:"Calibri","sans-serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
span.SpellE
 {mso-style-name:"";
 mso-spl-e:yes;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 font-size:10.0pt;
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-09-0058.crC%20opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-09-0058.crC%20opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-09-0058.crC%20opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-09-0058.crC%20opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-page-numbers:1;
 mso-title-page:yes;
 mso-footer:url("07-09-0058.crC%20opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
@page WordSection2
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-09-0058.crC%20opinion_files/header.htm") f2;
 mso-paper-source:0;}
div.WordSection2
 {page:WordSection2;}
 /* List Definitions */
 @list l0
 {mso-list-id:1447429723;
 mso-list-type:hybrid;
 mso-list-template-ids:495091366 -300914482 67698713 67698715 67698703 67698713 67698715 67698703 67698713 67698715;}
@list l0:level1
 {mso-level-tab-stop:none;
 mso-level-number-position:left;
 margin-left:1.25in;
 text-indent:-.25in;}
ol
 {margin-bottom:0in;}
ul
 {margin-bottom:0in;}
-->








NO. 07-09-00058-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL B

 



JULY
28, 2011

 



 

BUD PURDY, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 84TH DISTRICT COURT OF HUTCHINSON
COUNTY;

 

NO. 10,199; HONORABLE WILLIAM D. SMITH, JUDGE



 



 

Before QUINN,
C.J., and CAMPBELL and HANCOCK, JJ.

 

 

MEMORANDUM OPINION

 

Appellant, Bud Purdy, was convicted
of aggravated assault with a deadly weapon[1]
and sentenced to serve 18 years in the Institutional Division of the Texas Department
of Criminal Justice (ID-TDCJ).  Appellant
appeals contending that the evidence is insufficient to support the
judgment.  We affirm.

 

 

Procedural Background

            On
original submission, appellants issues were that the evidence was factually
insufficient for the jury to find that the knife used in the incident was a
deadly weapon and that the victim was placed in fear of imminent bodily injury
or death.  We agreed with appellant and
issued a memorandum opinion on June 29, 2010, so stating.  See Purdy v. State, No.
07-09-00058-CR, 2010 Tex. App. LEXIS 4955 (Tex.App.Amarillo
June 29, 2010).  The State filed a
petition for discretionary review with the Texas Court of Criminal
Appeals.  The Court of Criminal Appeals
subsequently issued its opinion on January 12, 2011, remanding the case back to
this Court for reconsideration in light of the Courts holding in Brooks v.
State, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010).  See In re Purdy, No. PD-1368-10, 2011 Tex. Crim. App. LEXIS 92 (Tex.Crim.App.
Jan. 12, 2011) (decision without published opinion).  In Brooks, the Court of Criminal
Appeals declared that the standard in Jackson v. Virginia, 443 U.S. 307,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only
standard that a reviewing court should apply in determining whether the
evidence is sufficient to support each element of a criminal offense that the
State is required to prove beyond a reasonable doubt.  Brooks, 323 S.W.3d
at 912.  We ordered the parties to
file supplemental briefs in light of the Court of Criminal Appealss
opinion.  We will now consider
appellants issues according to the standard set forth in Brooks.

Factual Background

On April 24, 2008, Skyler Hogan was walking to the home of his friend, Stetson
Reeves, in Fritch, Texas.  As Skyler walked down Bonner Street, he was approached by
appellant, who asked, Are you the owner of a red truck?  Skyler advised
appellant that he did not own a red truck but that his uncle did.  Appellant then stated that Skylers uncle owed him $500 and jail time.[2]
 As Skyler and
appellant continued to face each other, appellant became more and more
agitated.  Eventually, appellant pulled a
knife out of his pants pocket.  Skyler testified that he did not get a real good look at
the knife, but he described it as being about one inch wide, tapered to a sharp
point, and with a blade that he estimated to be three inches long.[3]  Skyler further
testified that, during the time appellant was holding the open knife, appellant
kept saying Ill stab you, Im crazy or Im psycho, Ill stab you.  In describing how he reacted to appellants
statements, Skyler explained that it caused him
concern.  Later, during further
examination by the State, Skyler said that the open
knife caused him to feel threatened.  Skyler did admit that, at one point during the
confrontation with appellant, he told appellant to put the knife away and that
he did not know why appellant would want to stab him.  As Skylers friend,
Stetson Reeves, walked up to the confrontation, he could see appellant holding
the knife.  Stetsons testimony confirmed
Skylers description of the knife.  Upon Stetsons arrival, appellant put the
knife back in his pocket and walked away.   


Approximately a week after the confrontation,
Deputy Eric Munoz of the Hutchinson County Sheriffs Office went to appellants
home, and began visiting with him about the assault on Skyler.  Initially, Munoz suspected appellants
roommate, Charles Beaver, was the assailant. 
However, Munoz testified that, as he spoke with appellant about the incident,
appellant began acting extremely nervous. 
After observing appellants demeanor, Munoz began focusing his questions
on appellant having been the assailant. 
Appellant then admitted that he was the one who approached Skyler,
however, he denied ever pulling a knife. 
After initially confronting appellant, Munoz called Skyler
on a cell phone and had him come to the location where Munoz was interviewing
appellant.  Upon seeing appellant, Skyler advised Munoz that appellant was the man who had
assaulted him.  

Munoz continued to interview
appellant and positioned his patrol car such that he was able to record a
significant portion of the interview. 
During the interview, appellant admitted that he did confront Skyler about someone owing him $500 and 15 days because of
the fine and jail sentence he had received in the earlier assault case.  Ultimately, Munoz presented a report of his
investigation to the Hutchinson County District Attorney, and appellant was
indicted for the instant offense.  A jury
convicted appellant and sentenced him to serve 18 years confinement in the
ID-TDCJ.

By two issues, appellant contends
that the evidence is insufficient to support the judgment as to the deadly
weapon allegation and, further, the evidence is insufficient to show that the
victim was placed in fear of imminent bodily injury or death.  Disagreeing with appellants contentions, we
will affirm the judgment.

Standard of
Review

In assessing the sufficiency of the
evidence, we review all the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson,
443 U.S. at 319; Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App.
2004).  [O]nly
that evidence which is sufficient in character, weight, and amount to justify a
factfinder in concluding that every element of the
offense has been proven beyond a reasonable doubt is adequate to support a
conviction.  Brooks, 323 S.W.3d
at 917 (Cochran, J., concurring).  We
remain mindful that [t]here is no higher burden of proof in any trial,
criminal or civil, and there is no higher standard of appellate review than the
standard mandated by Jackson.  Id.  When reviewing all of the evidence under the Jackson
standard of review, the ultimate question is whether the jurys finding of
guilt was a rational finding.  See
id. at 906, 907 n.26 (discussing Judge
Cochrans dissent in Watson v. State, 204 S.W.3d 404, 44850 (Tex.Crim.App. 2006), as outlining the proper application of
a single evidentiary standard of review).[4]  [T]he reviewing court is required to defer
to the jurys credibility and weight determinations because the jury is the
sole judge of the witnesses credibility and the weight to be given their
testimony.  Id.
at 899.

Analysis

The indictment charged that appellant
did then and there intentionally and knowingly use a deadly weapon, to wit: a
knife, that in the manner of its use and intended use was capable of causing
death and serious bodily injury and did then and there intentionally and
knowingly threaten SKYLER HOGAN with imminent bodily injury by the use of said
deadly weapon.  Appellants contentions
are that the evidence is insufficient as to the classification of the knife in
question as a deadly weapon, and whether Skyler Hogan
was threatened with imminent bodily injury because of the use of the
knife.  We will first address the issue
of the knife as a deadly weapon.

Deadly Weapon

            A
knife is not a per se deadly
weapon.  See In re J.A.W.,
108 S.W.3d 573, 576 (Tex.App.Amarillo 2003, no
pet.).  It can be a deadly weapon if, in
the manner of its use or intended use, it is capable of causing death or serious
bodily injury.  Tex. Penal Code Ann. § 1.07(a)(17)(B)
(West 2010).[5]  The statute speaks in terms of capability to
cause death or serious bodily injury, meaning that no actual death or serious
bodily injury need have occurred.  See
McCain v. State, 22 S.W.3d 497, 503 (Tex.Crim.App. 2000). 
In McCain, the Texas Court of Criminal Appeals analyzed the
interpretation of the phrase capable of causing death or serious bodily
injury found in section 1.07(a)(17)(B).  Id. 
The Court ultimately stated, [t]he placement of the word capable in
the provision enables the statute to cover conduct that threatens deadly force,
even if the actor has no intention of actually using deadly force.  Id. 
Therefore, to prove that a particular knife is a deadly weapon, the
State may produce testimony regarding the size of the knife, the manner of its
use, and its capability to cause serious bodily injury or death.  See Blain v. State, 647 S.W.2d 293, 294 (Tex.Crim.App.
1983).  In addition, the fact finder may
consider the words spoken by the appellant in making a deadly weapon finding.  See id.  

            When,
as here, there are no injuries suffered by the victim, we look to the following
relevant factors in determining whether the knife in question was a deadly
weapon.

1.    The size, shape, and sharpness of the knife;

2.    The manner of its use or intended use;

3.    The testimony of the knifes life-threatening
capabilities;

4.    The physical proximity between the victim and the

knife;

5.    The words spoken by appellant.

See Black v. State, No. 2-05-388-CR, 2006 Tex.
App. LEXIS 7823, at *13 (Tex.App.Fort Worth Aug. 31,
2006, pet. refd) (mem.
op., not designated for publication) (citing Thomas v. State, 821 S.W.2d
616, 619-20 (Tex.Crim.App. 1991)).  No one factor is controlling, rather the fact
finder must examine all of the factors in each case to determine whether the
knife is a deadly weapon.  Id. at *14.

            The
record reflects that, when appellant approached Skyler,
he was already yelling and appeared to be upset.  Appellant continued in his agitated state,
ultimately pulling a knife from his back pocket.  After appellant produced the knife, he
threatened to stab Skyler.  Skylers testimony
was that appellant told him Ill stab you, Im crazy or Im psycho, Ill
stab you.  Skyler
testified that he was put in fear by these statements.  The record further reflects that the knife in
question had a blade of approximately three inches and was approximately one
inch in width at the base of the blade. 
Both Skyler and Stetson testified that the
blade ended in a sharp point. 
Additionally, the testimony reveals that appellant and Skyler were within two to three feet of each other when
this encounter occurred.  Finally, in
response to questioning by the State, Skyler
testified that the knife in question could cause serious bodily injury.  

            Applying
the guidance of Jackson, 443 U.S. at 319, and Ross, 133 S.W.3d at
620, and remembering that we must view the evidence in the light most favorable
to the verdict, we cannot say that the jurys decision to find appellant guilty
beyond a reasonable doubt was an act of an irrational fact finder.  Accordingly, appellants first issue is
overruled.

Fear of Imminent Bodily Injury or
Death

            Appellants
second issue contends that the evidence is insufficient to support the jurys
verdict as to the element of the offense that Skyler was
in fear of imminent bodily injury or death. 
Appellant couches his challenge in terms of whether the deadly weapon
was used or intended to be used to inflict imminent bodily injury or death.  To support his contention, appellant cites
the Court to Bell v. State, 693 S.W.2d 434, 438 (Tex.Crim.App.
1985) (en banc).  However, the citation to Bell is not
applicable for two reasons.  First, as
appellant admits in his brief, that portion of the Bell opinion he
refers us to was dictum.    Second, the issue in Bell was
whether a lesser-included charge of reckless conduct was warranted under the
facts of the aggravated assault indictment for which the defendant was being
tried.  See id. at 437-38.  

            The
indictment in the case before us required the jury to determine whether
appellants use of a deadly weapon did intentionally and knowingly threaten Skyler Hogan with imminent bodily injury by the use of said
deadly weapon.  Appellant would have us
graft to this indictment a requirement of actual use or intended use, which we
decline to do.  Rather, the cogent
inquiry is was the use of the deadly weapon sufficient to threaten Skyler with imminent bodily injury or death.

            We,
of course, must review the evidence in the light most favorable to the
verdict.  Brooks, 323 S.W.3d at 906. 
Referring to the evidence in the record, we know that appellant did, in
fact, use a deadly weapon.  Additionally,
we know that Skyler felt that the knife in question
was capable of causing serious bodily injury or death.  Finally,  Skyler
testified that he perceived the threat and was, in fact, put in fear of
imminent bodily injury by the combination of appellants verbal threats while
wielding a knife.  Under the evidence in
this case, the jury was rationally justified in finding appellant guilty beyond
a reasonable doubt.  See Jackson,
443 U.S. at 319; Ross, 133 S.W.3d at 620.  Accordingly, appellants second issue is
overruled.

Conclusion

            Having
overruled appellants issues, we affirm the judgment of the trial court.

 

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice








 

Do
not publish. 











[1] See Tex.
Penal Code Ann. § 22.02(a)(2) (Vernon Supp.
2009).

 





[2] This appears to be a reference to appellants prior conviction
for assault that resulted in a fine of $500 and 15 days in jail.  Appellant believed that Skylers
uncle, Tom Pena, had been the person who reported the assault to the police.

 





[3] During direct examination, Skyler
estimated the length of the blade by demonstrating its length on a ball point
pen.  The prosecutor then measured that
length with a ruler.





[4]
We note that this Court has, at times, quoted Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988), for the proposition that we had to uphold the verdict of the jury unless
it was irrational or unsupported by more than a mere modicum of evidence.  We view such a statement, insofar as a
modicum of evidence being sufficient evidence, as contrary to a rigorous
application of the Jackson standard of review urged by the Court in Brooks.
  





[5] Further reference to the Texas Penal Code will be by
reference to section ___ or § ____.